# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DWAYNE COLLINS, | ) 1:10-cv-1301 LJO GSA |
| | ) |
| | ) **FINDINGS AND RECOMMENDATIONS** |
| Plaintiff, | ) **REGARDING PLAINTIFF'S** |
| | ) **SOCIAL SECURITY COMPLAINT** |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## BACKGROUND

Plaintiff Dwayne Collins ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge Gary S. Austin for findings and recommendations to the District Court.[1]

///

///

---

[1] Defendant consented to this Court's jurisdiction on July 28, 2010. (Doc. 14). However, on July 30, 2010, Plaintiff declined to consent. (Doc. 12). Accordingly, this case is submitted to the District Court Judge based on these Findings and Recommendations.

# FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed an application for Social Security Disability Insurance Benefits on February 26, 2007, alleging disability beginning May 13, 2006.  AR12.  Plaintiff's applications were denied initially and on reconsideration. AR 44, 55-58.  Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 68.  ALJ Stephen Webster held a hearing on April 28, 2009, and issued an order denying benefits on July 15, 2009. AR. 9-43.  The Appeals Council issued a decision affirming the ALJ's order.[3]  AR 1-3.

## Hearing Testimony

ALJ  held a hearing in Fresno, California, on April 28, 2009.   Plaintiff personally appeared and was assisted by attorney Jeffrey Milam.  AR 21-43.  Vocational Expert ("VE") Shapiro also testified.[4]

Plaintiff was forty seven years old at the time of the hearing.  AR 21.  He has three adult daughters.[5]  AR 23,  He is married and lives with his wife, step-father, and older brother. AR 23.  Plaintiff completed the ninth grade but does not have a GED.  AR 25.  He does not know how to read or write.  AR 30.  Plaintiff has a driver's license, but his wife does most of the driving because it hurts his knee and back to do so. AR 23.

Plaintiff has been in jail in the past.  The longest sentence he served was for thirteen months.  AR 25.  The last time he was in jail was approximately five years ago for driving while intoxicated. AR 25.  Plaintiff still consumes alcohol but only drinks about one twelve pack of beer a week.  AR 30.  Plaintiff receives no other form of public assistance.  AR 26**.**

In the past, Plaintiff worked as a janitor in a nursing home performing basic janitorial duties.  AR 28.  On occasion, he would change light bulbs but he can no longer do that because

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3]  The date the order was issued is not clear from the record.

[4] Mr. Shapiro's first name is not listed in the transcript.

[5] Plaintiff has one daughter and two step-daughters.

he is unable to climb a ladder.  AR 28. Plaintiff also did cement work and was employed as a

carpenter as well as a hospital cleaner.  AR 34-35.

Plaintiff stopped working because he suffers from back pain and pain in both of his

knees. AR 26.  In addition to the pain, his knees swell especially after walking or standing for

long periods.  AR 31-32.  He sees his primary care physician who prescribes pain medication

every three months which helps to relieve his symptoms.  AR 26. The doctors have told him that

a knee replacement may be an option in the future, however, he is too young for one right now.

AR 32.  Plaintiff uses a heating pad on his knee and back to relieve the pain. AR 33.  However,

he does not wear a brace or cane.  AR 32-33.  He  has not tried epidural treatments and he does

not do exercises.  AR 32-33.

As a result of these symptoms, Plaintiff is able to stand for approximately forty-five

minutes and he is only able to sit for about an hour or two.  AR 27.  He can lift ten to fifteen

pounds.  AR 27. He does not use any assistive devices.  AR 27. However, he elevates his legs for

two to three hours a day.  AR 31.

Despite these limitations, Plaintiff is able to take a shower, shave, cook, do lawn work,

and helps clean the house.  AR 24.  In his spare time, Plaintiff watches television for six or seven

hours a day and goes to church.  AR 25.  He does not spend much time with friends or family.

AR 24-25. However, he goes grocery shopping with his wife but goes to the car after about a half

hour to rest.  AR 27.

VE Shapiro testified at the hearing.  The VE was asked to consider a hypothetical in

which an individual could lift twenty pounds on occasion and ten pounds frequently, who could

sit, stand and walk for six out of eight hours, who could occasionally climb, balance, stoop,

kneel, crouch or crawl, and who could occasionally use foot pedals.  AR 36.   The VE indicated

this person would be unable to perform Plaintiff's past work. AR 36.  However, VE Shapiro

indicated that this person would be able to perform other light work such as a cafeteria attendant,

a can filling and closing machine tender, and a housekeeping cleaner of which there are 138,000,

24,900, and 244,000 jobs available nationally.  AR 36-37.

1   The VE was asked to consider a second hypothetical in which the factors were the same

2   as the first hypothetical but that this person would also be required to sit and stand at will.  The

3   VE indicated that this person would still be unable to perform Plaintiff's past work.  However,

4   there would be other jobs such as a ticket seller and a parking lot attendant of which there are

5   45,300 and 35,300 jobs available nationally.  AR 37-38.

6   When asked to consider a third hypothetical in which the person would be required to

7   elevate his leg every three to four hours for a couple of hours, the VE testified that there would

8   be no jobs available.  AR 39-40.

9   **Medical Record**

10   The entire medical record was reviewed by the Court (AR 145-191), however, only those

11   medical records relevant to the issues on appeal will be addressed below as needed in this

12   opinion.

13   *Dr. Holm, M.D.*

14   Plaintiff saw Dr. Holm for the first time on May 12, 2006 for high blood pressure, chronic

15   knee pain, and "disability."  AR 146.  He told Dr. Holm that he had been on Tiazac for his high

16   blood pressure for at least two years but often forgets to take his medications. AR 146.  He also

17   reported he had an arthroscopic procedure performed by his orthopedist, however Plaintiff was

18   told that he was too young for a knee replacement.  AR 146.  Dr. Holm indicated he would get

19   the MRI report, refill Plaintiff's pain medication (Norco), and that he planned on extending

20   Plaintiff's disability for six months. AR 147.  It was noted that Plaintiff did not have insurance

21   and that he smoked one pack of cigarettes a day. AR 151.

22   Plaintiff returned to Dr. Holm on October 25, 2006 complaining of increased pain and

23   swelling in his lower extremities.  AR 149. Dr. Holm completed a disability form for Plaintiff

24   extending Plaintiff's disability for six months again noting that Plaintiff did not have health

25   insurance.  AR 150.

26   Plaintiff saw Dr. Holm again on March 15, 2007, and reported swelling and pain in his

27   legs.  He also reported that he was unable to walk to the mailbox.  AR 149.  Plaintiff was

28   prescribed Norco for pain with five refills.  AR 149.

1    Dr. Holm examined Plaintiff again on August 13, 2007.  Plaintiff had difficulty standing

2 and was stiff.  Dr. Holm noted that Plaintiff's disability application had been denied.  AR 177.

3 Plaintiff also reported running out of his medication early in June and July.  Dr. Holm increased

4 Plaintiff's Norco to five tablets per day and gave him a refill for three months.  AR 177.  Plaintiff

5 was advised that he needed to stay within the limits of his prescription and the doctor would not

6 be refilling his prescription early.  AR 177.

7      Plaintiff returned to Dr. Holm on December 13, 2007, and reported numbness in his feet

8 and hands. On examination, Plaintiff's "air was full of tobacco."  AR 176.   Plaintiff requested x-

9 rays of his knee and back.  AR 176.  Dr. Holm noted that Plaintiff had been seeing a disability

10 doctor who was taking care of the disability issues, however, Plaintiff advised him that the

11 lawyer asked Plaintiff to get an x-ray of his knee and back.  AR 176.  Plaintiff reported taking

12 some of his wife's Xanax which helped to relieve his anxiety. AR 176.  Plaintiff was prescribed

13 thirty pills of Xanax to take as needed.  AR 176.

14    Plaintiff saw Dr. Holm again on January 26, 2008, after he fell down a flight of stairs and

15 injured his ribs.  AR 175.  Dr. Holm indicated that Plaintiff smelled like smoke.  AR 175.  Dr.

16 Holm noted that Plaintiff was taking eight Vicodin a day and advised him that was the maximum

17 dosage per day that he should be taking.  AR 175.  Dr. Holm prescribed another 240 Vicodin

18 pills which the doctor indicated was another one month supply.  AR 175.

19    On March 26, 2008, Dr. Holm examined Plaintiff after he complained of chest pain.  Dr.

20 Holm diagnosed Plaintiff with chronic back pain due to osteoarthritis, chronic right knee pain,

21 and neuropathy.  AR 174.  Dr. Holm prescribed three months of Norco and noted that Plaintiff

22 requested additional Xanax.  AR 174.  Records also reflect that Plaintiff called Dr. Holm in July

23 and September 2008, requesting additional Norco refills which were presecribed.  AR 174.

24    On September 25, 2008, Dr. Holm noted that Plaintiff was waiting for a court date

25 regarding his disability application.  AR 173.  Dr.  Holm also opined and that Plaintiff probably

26 needed a knee replacement given the MRI but that he would wait on referring him to an

27 orthopedist because Plaintiff  had no insurance.  AR 173.  Dr. Holm noted that Plaintiff had fluid

28

1  on his right knee, effusion, and both lateral and medial tenderness.  AR 173.  The doctor

2  prescribed Xanax and Norco with three refills. AR 173.

3       On December 12, 2008, Plaintiff presented to Dr. Holm with problems with his ears as

4  well as knee pain.  The doctor suggested that Plaintiff stop smoking and that he did not feel any

5  pulse in his feet which is also evidence of peripheral artery disease.  AR 172.  Dr. Holm

6  recommended an ultrasound of the arterial system in both legs and a work up for neuropathy.

7  AR 171.  Dr. Holm prescribed Norco with five refills and Xanax with three refills.  AR 172.

8       On April 17, 2009, Dr. Holm completed a questionnaire in which he opined that Plaintiff

9  could only sit and stand for one hour, that he could not bend, stoop or kneel.  Dr. Holm indicated

10  that he based the findings on x-rays taken on December 13, 2007, and on Plaintiff' claims of pain

11  when walking.  AR 187-188.

12     *Dr. Fariba Vesali, M.D.*

13       On June 7, 2007, Plaintiff was evaluated by Fariba Vesali, M.D. a state agency

14  consultative physician who is board eligible in Physical Medicine and Rehabilitation. AR 152-

15  155.  Plaintiff complained of low back pain and right knee pain. Plaintiff presented with a limp

16  and the doctor noted Plaintiff smelled of alcohol when he entered the examination room.  AR

17  153.

18       Dr. Vesali examined Plaintiff and found that he had normal muscle tone in his upper and

19  lower extremities.  AR 154. The doctor noted that there was no obvious inflamation over

20  Plaintiff's right knee and anterior and "posterior drawer signs were symmetrical and negative in

21  bilateral knees." AR 154.   It was noted that there was "decreased light touch to pinprick

22  sensation over bilateral feet."  AR 154.  Plaintiff was advised to stop drinking and smoking

23  because it causes decreased sensation in the distal lower extremities and the neuropathy may be

24  related to smoking and drinking alcohol for a long period of time.   AR 155.

25       Dr. Vesali opined that Plaintiff could walk and sit for six hours out of an eight hour day

26  with normal breaks.  The doctor further opined that Plaintiff could carry fifty pounds

27  occasionally and twenty five pounds frequently but imposed no other limitations.  AR 155.

28  ///

1    *Dr. Khong, M.D.*

2        Dr. A.M. Khong, M.D. a state agency physician reviewed Plaintiff's medical records on

3    June 26, 2007.  AR 158- Dr. Khong opined that Plaintiff could occasionally lift fifty pounds and

4    frequently lift twenty five pounds; he could stand and walk for up to six hours in an eight hour

5    day; he could use right leg controls occasionally; and perform postural activities occasionally.

6    AR 159-162.

7        *Dr. Fonte, M.D.*

8        On October 25, 2007, Dr. Fonte, a non-examining state physician reviewed the medical

9    evidence and agreed with Dr. Khong's earlier opinion.  AR 166-167.

10       *Additional Testing and Documents*

11       *X-Rays*

12       Plaintiff had x-rays of his back and right knee taken on June 7, 2007 the day of Dr.

13   Vesali's examination.  X-rays of his lower back revealed degenerative disc changes at L4 and L5

14   including sclerotic changes involving the superior end plate of L4.  AR 156.  Marginal

15   osteophytes and narrowing of the L4-5 and L5-S1 spaces were noted.  AR 156.  Dorsal alignment

16   was maintained and mild degenerative changes were noted at L2 and L3.  AR 156.  Sacroiliac

17   joints appeared intact.  AR 156.  An MRI for further evaluation was recommended.  AR 156.  X-

18   rays of his right knee showed no acute fracture or dislocation and some mild degenerative

19   changes.  AR 157.  An MRI of his knee was also recommended.  AR 157.

20       Additional x-rays were ordered by Dr. Holm on December 13, 2007.  An x-ray of

21   Plaintiff's lumbar spine revealed some narrowing at the posterior disc spaces at L4-5; marked

22   narrowing of the disc at L5-S1; and a bulky bridging-type osteophyte formation of the lower

23   lumbar spine and lumbosacral junction. These osteophytes were greatest at L4-L5.  The posterior

24   elements were intact.  The impression was hypertonic spondylosis, especially of L4 and L5 with

25   multilevel degenerative disc disease primarily L3 thorugh S1.  AR 168.

26       An x-ray of Plaintiff's thoracic spine taken on December 13, 2007,  revealed mild

27   spondylosis greatest in the lower thoracic.  Some spurring of the endplates especially at the T11-

28   T-12 was also noted.  AR 169.   An x-ray of Plaintiff's right knee revealed the medial

1    compartment of joint space was quite narrowed and moderate marginal spurring on the medial

2    plateau, medial condyle, and the patella were noted.  Marginal spurs were also present on the

3    lateral condyle with mild soft tissue fullness of the suprapatellar bursa.  Mild subchondral

4    sclerotic change was present in the medial compartment.  As a result, moderate osteoarthritis was

5    most severe in the medial compartment.  AR 170.

6         *Records from Mercy Medical Center*

7         A report from Mercy Medical Center in Merced, California was submitted to the Appeals

8    Council after the hearing before the ALJ.  The records reveal that Plaintiff was admitted to the

9    hospital from October 23 through October 26, 2009, for the purpose of resolving an infection

10   after the amputation of his second and third toe on his left foot.  AR 188-190.  Plaintiff was

11   treated with antibiotics and was advised that he should refrain from excessive amounts of alcohol

12   consumption or tobacco use.  Plaintiff refused. AR 190.  Plaintiff's condition including his blood

13   pressure was stable upon release from the hospital.

14   **ALJ Decision**

15        Using the Social Security Administration's five-step sequential evaluation process, the

16   ALJ determined that Plaintiff did not meet the disability standard.  AR 18.  More particularly, the

17   ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged disability

18   onset date of May 13, 2006, through the date of insured of December 31, 2009.  AR 14.  Further,

19   the ALJ identified degenerative disc disease of the lumbar spine and degenerative joint disease of

20   the right knee as severe impairments.[6]  AR 14.  Nonetheless, the ALJ determined the severity of

21   Plaintiff's impairments did not meet or exceed any of the listed impairments.  AR 15.

22        Based on his review of the entire record, the ALJ determined that Plaintiff has the

23   residual functional capacity ("RFC") to perform light work except that he is limited to occasional

24   climbing, balancing, stopping, kneeling, crouching or crawling, with occasional use of foot

25   controls.  AR 15.  Next, the ALJ determined that Plaintiff could not perform his past work.  AR

26   17.  However, using the Medical-Vocational Rules, 20 CFR Part 404 Subpart P, Appendix 2

27

28        [6] The AL determined that Plaintiff's hypertension and neuropathy were not severe impairments.  AR 14.

1  ("the grids"), the ALJ determined Plaintiff was not disabled as defined by the Social Security

2  Act. AR 21.  Moreover, the ALJ determined that there are other jobs that exist in the national

3  economy that Plaintiff could perform.  AR 17.

4                                        **SCOPE OF REVIEW**

5          Congress has provided a limited scope of judicial review of the Commissioner's decision

6  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

7  this Court must determine whether the decision of the Commissioner is supported by substantial

8  evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

9  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

10 *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

11 reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

12 401.  The record as a whole must be considered, weighing both the evidence that supports and

13 the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

14 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

15 apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

16 This Court must uphold the Commissioner's determination that the claimant is not disabled if the

17 Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

18 substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

19 Cir. 1987).

20                                            **REVIEW**

21          In order to qualify for benefits, a claimant must establish that he is unable to engage in

22 substantial gainful activity due to a medically determinable physical or mental impairment which

23 has lasted or can be expected to last for a continuous period of not less than twelve months.  42

24 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

25 such severity that he is not only unable to do her previous work, but cannot, considering his age,

26 education, and work experience, engage in any other kind of substantial gainful work which

27 exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

28

1   The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

2   Cir. 1990).

3        In an effort to achieve uniformity of decisions, the Commissioner has promulgated

4   regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

5   C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f).   Here, Plaintiff argues that when applying this

6   process the ALJ : 1) improperly rejected Plaintiff's treating physician opinion, 2) incorrectly

7   made an adverse credibility determination, 3) improperly rejected lay opinion testimony, and 4)

8   failed to meet his burden at step five.  In opposition, Defendant argues that the ALJ: 1) properly

9   evaluated the physicians' opinions and the medical record, 2) correctly rejected Plaintiff's

10  testimony, 3) properly considered the lay opinion testimony, and 3) met his burden at step five.

11                                **DISCUSSION**

12  *A.    Physician Opinion Evidence*

13       Plaintiff argues that the ALJ improperly rejected Plaintiff's treating physician opinion and

14  instead erroneously relied upon the opinion the state agency medical consultants. Defendant

15  contends that the ALJ's consideration of the medical opinion evidence was proper.

16       Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

17  who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

18  (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

19  physicians).  As a general rule, more weight should be given to the opinion of a treating source

20  than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643,

21  647 (9th Cir. 1987).  At least where the treating doctor's opinion is not contradicted by another

22  doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d

23  1391, 1396 (9th Cir. 1991).  Even if the treating doctor's opinion is contradicted by another

24  doctor, the Commissioner may not reject this opinion without providing "specific and legitimate

25  reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722

26  F.2d 499, 502 (9th Cir. 1983).  This can be done by setting out a detailed and thorough summary

27  of the facts and conflicting clinical evidence, stating his interpretation thereof, and making

28  findings.  *Magallanes  v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989).  The ALJ must do more than

1   offer his conclusions.  He must set forth his own interpretations and explain why they, rather than

2   the doctors', are correct.  *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988).  Therefore, a

3   treating physician's opinion must be given controlling weight if it is well-supported and not

4   inconsistent with the other substantial evidence in the record.  *Lingenfelter v. Astrue*, 504 F.3d

5   1028 (9th Cir. 2007).

6       In *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and

7   expounded upon its position regarding the ALJ's acceptance of the opinion an examining

8   physician over that of a treating physician.  "When an examining physician relies on the same

9   clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions

10  of the examining physician are not '"substantial evidence."'  *Orn,* 495 F.3d at 632; *Murray*, 722

11  F.2d at 501-502.  "By contrast, when an examining physician provides 'independent clinical

12  findings that differ from the findings of the treating physician' such findings are 'substantial

13  evidence.'"  *Orn*, 496 F.3d at 632; *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985).

14  Independent clinical findings can be either (1) diagnoses that differ from those offered by another

15  physician and that are supported by substantial evidence, *see Allen v. Heckler*, 749 F.2d 577, 579

16  (9th Cir.1985), or (2) findings based on objective medical tests that the treating physician has not

17  herself considered, *see Andrews*, 53 F.3d at 1041.

18      Here, the ALJ had four medical opinions to consider: (1) Dr. Holm, Plaintiff's treating

19  physician, 2) Dr. Vesali, a state consultative examining physician, and 3) Drs. Khong and Fonte*,*

20  two state agency non-examining physicians.  Therefore, the ALJ must provide specific and

21  legitimate reasons for rejecting Plaintiff's treating physician's opinion.

22      With regard to the physician evidence the ALJ stated as follows :

23      In arriving at the exertional component of the above residual capacity, I credit the
        July and October 2007 opinions of the Disability Determination Services (DDS)

24      medical advisor to the extent that he indicated the capacity to perform a range of
        work at the medium exertional level with postural limitations consistent with the

25      above residual functional capacity ...

26      I give little weight to Dr. Holm's April 2009 assessment form indicating that
        claimant cannot even perform a limited range of work at the sedentary exertional

27      level.  First, I note that Dr. Holm is claimant's family practitioner and not an
        orthopedic specialist.  Consistent with this, much of Dr. Holm's information

28      regarding claimant's orthopedic impairments, including his allegedly being too

11

1  young for surgery, has been received second-hand from claimant.  I also note that
   Dr. Holm has only treated claimant symptomatically and principally with large
2  amounts of narcotic pain medication.  Finally, I note Dr. Helm's ongoing concerns
   with compliant with medications, as well as repeatedly urging him to stop
3  smoking.  In sum, to the extent that this opinion is inconsistent with the above
   residual capacity, I find Dr. Holm's opinion to be inordinately based on claimant's
4  subjective complaints that I find not fully credible.  Further, to the extent that the
   medical records do not support this opinion, I find that Dr. Holm is acting more as
5  an advocate for claimant's benefits rather than as objective practitioner.
   (Citiations omitted).  AR 16.

6

7      Thus, the ALJ gave more weight to the state agency physicians' reports and rejected Dr.

8  Holm's opinion. These reasons are supported by the record.

9      First, because Dr. Vesali is board eligible in physical medicine and rehabilitation, his

10 opinion is entitled to deference. *See*, 20 C.F.R. § 404.1527(d)(5) ("generally more weight is

11 given to a specialist about medical issues related to his or her area of specialty that to the opinion

12 of a source who is not a specialist).  Dr. Vesali examined Plaintiff and found that there was no

13 inflammation over the right knee and other aspects of the examination were unremarkable. AR

14 154.  Therefore, Dr. Vesali formulated independent clinical findings that were based on his

15 objective examination which constitutes substantial evidence.

16     Furthermore, Plaintiff argues that the ALJ's rejection of Dr. Holm's report was improper

17 because Dr. Holm relied on objective tests including x-rays taken in 2008 that none of the other

18 doctors had an opportunity to examine when they rendered their opinion. (Doc. 22 at pg. 3).

19 Counsel implies that the other doctors had no access to x-rays when formulating their opinions.

20 However, this is not the case.  Plaintiff had two sets of x-rays taken : 1) one set was taken on

21 June 7, 2007, the date of Dr. Vesali examination (AR 156-157), and 2) another set taken on

22 December 13, 2007, which were ordered by Dr. Holm (AR 168-169).  Dr. Vesali examined

23 Plaintiff on the date the x-rays were taken, and Dr. Khong's review occurred on June 26, 2007,

24 followed by Dr. Fonte's review which occurred on October 25, 2008.  AR 159-162; 166, 167.

25 Therefore, all three state agency doctors had x-rays to review at the time their opinions were

26 rendered.

27     Second, the ALJ noted that much of Dr. Holm's opinion relied on Plaintiff's subjective

28 reports of pain which the ALJ did not find credible.  This is a valid reason to reject Dr. Holm's

1    opinion. *See, Morgan v. Commissioner of Social Security*, 169 F. 3d 595, 602 (9th Cir. 1999)

2    (rejecting treating source opinions that 'were premised on claimant's subjective complaints').

3    For example, during Plaintiff's first visit to Dr. Holm, Plaintiff told Dr. Holm that he saw a

4    doctor in Merced who told him he needed a knee replacement but was too young.  AR 146.  Dr.

5    Holm indicated that he would order the MRI of Plaintiff's knee.  AR 147.  However, the record

6    does not show that the MRI's or medical records from the other doctor were ever obtained.

7    Moreover, although Dr. Holm's 2009 opinion indicates that he was basing the opinion in part on

8    Plaintiff's x-rays, it also clearly indicates that he was basing his opinion on the Plaintiff's

9    complaints that it hurts to walk and to get up. AR 186.  These subjective complaints were not

10   found to be credible by the ALJ as discussed in more detail below. Because the ALJ determined

11   that Plaintiff's description of his limitation were not entirely credible, it is reasonable to discount

12   Dr. Holm's limitations.  *Bray v. Commissioner of Social Security*, 554 F. 3d 1219, 1228 (9th Cir.

13   2009); *See also*, *Tommasetti v. Astrue*, 533 F. 3d 1035, 1041 (9th Cir. 2008) (An ALJ may reject

14   the treating physician's testimony if it is based largely on the subjective complaints of a non-

15   credible claimant).

16        The ALJ also had some concerns that Dr. Holm was acting as Plaintiff's disability

17   advocate which may have influenced the doctor's opinions.  This finding is also supported by the

18   record.  For example, Dr. Holm extended Plaintiff's disability for six months after examining

19   him only one time. AR 147.  Dr. Holm also extended Plaintiff's disability for another six months

20   during Plaintiff's second visit without performing any objective tests.  AR 150.  The fourth time

21   Dr. Holm saw Plaintiff he commented that his disability application was denied.  AR 177.  Dr.

22   Holm also only ordered x-rays on Plaintiff's behalf after Plaintiff had advised him that his lawyer

23   needed it for his disability application.  AR 176.  Thus, there is support for the ALJ's conclusion

24   that Dr. Holm's findings may be biased.

25        As an aside, the Court notes that the ALJ also relies on the fact that Dr. Holm only treated

26   Plaintiff symptoms with large amounts of pain medication.  As Plaintiff notes, there is evidence

27   in the record that Plaintiff did not have health insurance which may have impacted Dr. Holm's

28   treatment strategies. Plaintiff correctly argues that disability benefits may not be denied to a

13

disabled applicant because of a failure to obtain treatment that the claimant cannot afford.  *Orn v. Astrue*, 459 F.3d 625, 638 (9th Cir. 2007); *Gamble v. Chater*, 68 F. 3d 319, 321 (9th Cir. 1995).  However, it appears that the ALJ is not penalizing Plaintiff for not getting treatment, but instead has concerns about Dr. Holm's treatment strategies which primarily consisted of prescribing large amounts of Norco, Vicadin, and Xanax.  These findings are supported by the record and are discussed in more detail below.

Finally, Plaintiff argues that the ALJ erred in failing to find that Plaintiff's peripheral neuropathy was not a severe impairment at step two.  He argues that the ALJ had an obligation to develop the record regarding this condition because Plaintiff could not afford additional testing to substantiate the diagnosis.  However, as noted by Defendant, the step two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims.  *Bowen v. Yuckert,* 482 U.S. 137, 153-154 (1987).  At step two of the sequential evaluation process, the ALJ must conclude whether Plaintiff suffers from a "severe" impairment.  The regulations define a non-severe impairment as one that does not significantly limit [the claimant's] physical and mental ability to do basic work activities.  An impairment is not severe "if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  *Smolen v. Chater*, 80 F. 3d 1273, 1290 (9th Cir. 1996).

To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. §§ 404.1508; 416.908.  The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms.  20 C.F.R. §§ 404.1529, 416.929.

The adjudicator's role at step two is further explained by SSR 85-28:

A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.

1   SSR 85-28.

2   In this case, the ALJ noted that Dr. Holm only recently diagnosed neuropathy. AR 171,

3   174.  Moreover,  nowhere in the record does Dr. Holm opine that this condition in particular

4   prevented Plaintiff from working.  In general, it is the duty of the claimant to prove to the ALJ

5   that he is disabled.  20 C.F.R. § 404.1512(a).  To this end, he must bring everything that supports

6   a disability determination to the ALJ's attention, including medical or other evidence relating to

7   the alleged impairment and its effect on her ability to work.  *Id.*  For his part the ALJ has the

8   responsibility to develop "a complete medical history" and to "make every reasonable effort to

9   help [the plaintiff] get medical reports." 20 C.F.R. § 404.1512(d).   If this information fails to

10  provide a sufficient basis for making a disability determination, or the evidence conflicts to the

11  extent that the ALJ cannot reach a conclusion, he may seek additional evidence from other

12  sources. 20 C.F.R. §§ 404.1512(e);  404.1527(c)(3), see also *Mayes v. Massanari*, 262 F.3d 963,

13  968 (9th Cir.2001).

14  Here, the ALJ conducted a thorough review of the entire record and noted there was not

15  sufficient evidence that Plaintiff's neuropathy was limiting his ability to work. Plaintiff argues

16  that his recent hospitalization at Mercy Medical Center substantiates a finding that this condition

17  is severe.  The Court has considered these documents and finds that the evidence is not material

18  because the documents only reflect that Plaintiff was treated for an infection secondary to an

19  amputation.  AR 188-190. [7]   There is no reference that the infection was caused by neuropathy,

20  nor is there any indication that this condition affects his ability to work.  Here, the Appeals

21  Council considered the additional evidence submitted by Plaintiff and found no reason to alter

22  the ALJ's decision.  AR 1-3.  If Plaintiff believes that his ability to work has been restricted

23  based on the amputation of his toes, the appropriate remedy is to file a new disability application.

24

25      [7]  The Court must consider evidence added to the record by the Appeals Council even where that evidence
26  was not before the ALJ.  *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).  Pursuant to the provisions of 42
    U.S.C. § 405 (g), as amended in 1980, a case may be remanded to the Secretary if the new evidence submitted is
27  material, and there is good cause for the failure to incorporate it into the record.  In order to be "material," the new
    evidence must be probative of the claimant's condition as it existed during the relevant time period -- on or before
28  the administrative hearing.  *Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 511 (9th Cir. 1987).

1   It would be improper for this Court to make new findings based on injuries occurring after the

2   ALJ's decision.

3   **B.      *Credibility***

4          Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting

5   his testimony.  Defendant argues that the ALJ's credibility finding is supported by substantial

6   evidence.

7          A two step analysis applies at the administrative level when considering a claimant's

8   subjective symptom testimony.  *Smolen v. Chater*, 80 F.3d at 1281. First, the claimant must

9   produce objective medical evidence of an impairment that could reasonably be expected to

10  produce some degree of the symptom or pain alleged.  *Id*. at 1281-1282.  If the claimant satisfies

11  the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony

12  regarding the severity of his symptoms only if he makes specific findings that include clear and

13  convincing reasons for doing so.  *Id*. at 1281.  The ALJ must "state which testimony is not

14  credible and what evidence suggests the complaints are not credible."  *Mersman v. Halter*, 161

15  F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack of specific,

16  clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for

17  [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence");

18  Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific to make

19  clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the

20  individual's statements and reasons for that weight").

21         An ALJ can consider many factors when assessing the claimant's credibility.  *See Light v.*

22  *Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ can consider the claimant's

23  reputation for truthfulness, prior inconsistent statements concerning his symptoms, other

24  testimony by the claimant that appears less than candid, unexplained or inadequately explained

25  failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily

26  activities, claimant's work record, or the observations of treating and examining physicians.

27  *Smolen v. Chater*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007).

28

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Here, the ALJ identified degenerative disc disease and degenerative joint disease of the right knee as severe impairments. AR 14. He further found that:

> After considering the evidence of record, the undersigned finds that the claimant's medically-determinable impairments can reasonably be expected to produce the alleged symptoms, but the claimant's statements about the intensity, persistence, and limiting effects of those symptoms are not credible to the extent they are inconsistent with my assessment of his residual functional capacity assessment.

AR 16. This finding satisfied step one of the credibility analysis. *Smolen v. Chater*, 80 F.3d at 1281-1282.

Because the ALJ did not find that Plaintiff was malingering, he was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Smolen v. Chater*, 80 F.3d at 1283-1284; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (as amended). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his symptoms solely because it is unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, it is not sufficient for the ALJ to make general findings; he must state which testimony is not credible and what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell*, 947 F.2d at 345-346.

Here, the ALJ made several specific credibility findings:

> Claimant's statements regarding being too young for surgery appear inconsistent with the medical records of treating physician Edward Holm, M.D. Dr. Holm has treated claimant principally with pain medications and has expressed concerns about compliance on several occasions as well as repeatedly urging him to stop smoking, most recently in December 2008. Curiously, in December 2007, Dr. Holms also noted that claimant "hates medicines and pills." Despite the apparent hatred of pills, claimant is noted to be taking an extremely high volume of pain medications, specifically 240 Norco with five refills as necessary as recently as December 2008. In addition, in December 2007, claimant self-prescribed some of his wife's Xanax for himself and subsequently requested and received his own prescription of Xanax. Finally, I give little weight to the November and December 2007 third-party statements of Kandi Dunham, Darla Parmley and Pamela Collins, all of which attest to claimant's ability to read and write, [sic] claimant has been able to successfully perform a wide variety of unskilled, semiskilled and unskilled jobs in the past.

1    AR 16. (Citations omitted).

2    In short, the ALJ provided a number of clear and convincing reasons that are supported

3    by the record when concluding Plaintiff's subjective symptom testimony was less than credible.

4    These reasons include: (1) the medical evidence did not support Plaintiff's alleged symptoms, (2)

5    Plaintiff's explanation that he was too young for knee surgery was not consistent with Dr.

6    Holm's assessment, (3) Plaintiff is taking large amounts of prescription medication and obtained

7    Xanax from his wife and doctor, and 4) Plaintiff has been non-compliant with treatment.

8    Here, ALJ Webster clearly identified what testimony he found not credible and what

9    evidence undermined Plaintiff's complaints. *Lester v. Chater,* 81 F.3d at 834. Furthermore, the

10   reasons provided are acceptable. *See, e.g., Morgan v. Commissioner v. Social Security*

11   *Adminstration,* 169 F. 3d 595, 600 (9th Cir. 1999) (conflict between claimant's subjective

12   complaints and the objective medical evidence in the record is a specific and substantial reason

13   that undermines a claimant's credibility); *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir. 1995)

14   (inconsistencies between the record and medical evidence supports a rejection of a claimant's

15   credibility).[8]

16   Second, the record establishes that Plaintiff was consuming large quantities of narcotic

17   drugs including Norco, Xanax, and Vicodin. AR 146, 149, 172-174, 176, 177,  Dr. Holm

18   continually increased Plaintiff's dosage often refilling medications for several months at time. *Id.*

19   The ALJ also expressed concerns that Plaintiff was not compliant with this treatment which is

20   supported by the record.  For example, Plaintiff's doctor needed to advise him that he should not

21   be taking more than eight Vicodin pills in one day.  AR 175.  Moreover, Plaintiff called the

22   doctor's office on several occasions requesting additional medication because he had prematurely

23   used all of the drugs. AR 174, 177.   In fact, Dr. Holm advised Plaintiff that additional

24   prescriptions would not be given if he continued to request additional medications prior to the

25   time that his prescription was scheduled to run out.  AR 175.  Accordingly, there is support for

26

27   ⁸ *See also* 20 C.F.R. § 416.929 (objective medical evidence can be used in determining credibility; SSR 96-7p (objective medical evidence is a useful indicator to assist in making a reasonable conclusion about credibility and the ability to function).

28

1   the ALJ's conclusion that Plaintiff was not following the doctor's treatment plan with

2   undermines his credibiltiy.  *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989) (failure to follow

3   prescribed treatment can be considered in determining credibility).  This Court will not disturb

4   the ALJ' interpretation of the evidence on this issue.  Although evidence supporting an ALJ's

5   conclusions might also permit an interpretation more favorable to the claimant, if the ALJ's

6   interpretation of evidence was rational, as here, the Court must uphold the ALJ's decision..

7   *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

8        Finally, the Court agrees with Plaintiff that the ALJ may have improperly relied on

9   Plaintiff's failure to stop smoking as a basis to reject his credibility.  However, because there is

10   evidence to support the ALJ's other conclusions, the credibility determination will not be

11   disturbed.  *See eg., Batson v. Barnhart*, 359 F.3d 1190, 1197 (9th Cir. 2004) (upholding ALJ's

12   credibility determination even though one reason may have been in error).

13        **C.**     ***Lay Witness Testimony***

14        Plaintiff also argues the ALJ improperly rejected the testimony of Plaintiff's family

15   members.  AR 137-139.  The Court disagrees.

16        Lay witness testimony as to a claimant's symptoms is competent evidence which the

17   Commissioner must take into account.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

18   The ALJ may reject such testimony if he does so expressly, in which case "he must give reasons

19   that are germane to each witness."  *Id.*  The ALJ need not discuss lay witness testimony that

20   pertains to whether or not an impairment exists.  *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th

21   Cir. 1996).  These medical diagnoses are beyond the competence of lay witnesses and therefore

22   do not constitute competent evidence.  20 C.F.R. § 404.1513(a).  However, once an impairment

23   has been established by medical evidence, the extent of the diagnosed impairment may be

24   testified to by the lay witnesses.  20 C.F.R. § 404.1513(e); *Sprague v. Bowen*, 812 F.2d 1226,

25   1232 (9th Cir. 1987).

26        In this instance, the ALJ gave little weight to the Plaintiff's family member's assessment

27   regarding the Plaintiff's literacy levels.  AR 16.  As a basis for doing so, the ALJ noted that

28   Plaintiff was able to perform a wide range of jobs in the past despite these limitations.

1   Therefore, the ALJ did not flatly reject the reports but adequately explained his reasoning for

2   giving them minimal weight.  Moreover, as Plaintiff concedes, this finding would only be

3   relevant if Plaintiff were restricted to sedentary work because the grids would mandate a finding

4   of disability. As discussed in this opinion, the ALJ's residual functional capacity limiting

5   Plaintiff to light work is supported by substantial evidence so a remand or reversal is not

6   warranted.

7          **D.      Step Five**

8          Plaintiff argues that ALJ did not meet his burden at step five because the residual

9   functional capacity and the limitations the ALJ included in the hypotheticals posed to the VE did

10  not did not accurately reflect actual Plaintiff's limitations.  The Court disagrees.

11         The ALJ  the found Plaintiff could perform light work except that he is limited to

12  occasional climbing, balancing, stopping, kneeling, crouching or crawling, with occasional use of

13  foot controls. AR 15.   The ALJ applied the medical-vocational guidelines as a framework and

14  determined that jobs exist in significant numbers in the national economy that the Plaintiff can

15  perform.  AR 17. The ALJ also questioned a VE who indicated that there were jobs available in

16  the national economy that Plaintiff could perform.

17         Light work represents " substantial work capability compatible with making a work

18  adjustment to substantial numbers of unskilled jobs, and thus generally provides sufficient

19  occupational mobility even for severely impaired individuals who are not of advanced age and

20  have sufficient educational competencies for unskilled work."  *See* 20 C.F.R.§ 404, Subpart P,

21  Appendix 2, § 202.00. Here, the ALJ included limitations to the VE that he considered were

22  credible were based on substantial evidence.  Thus, the ALJ met his burden at step five.

23  *Osenbrock v. Apfel*, 240 F. 3d 1157, 1164-1165 (9th Cir. 2001) (An ALJ is not bound to accept as

24  true restrictions set forth in the second hypothetical if they are not supported by substantial

25  evidence).

26  ///

27  ///

28

**RECOMMENDATION**

Based on the foregoing, the ALJ's decision is supported by substantial evidence and is free of legal error.  It is recommended that judgment be entered against Plaintiff, Dwayne Collins and in favor of Defendant Commissioner of Social Security.

These findings and recommendations will be submitted to the Honorable Lawrence J. O'Neill pursuant to the provisions of Title 28 of the United States Code section 636(b)(l). Within **ten (10)** days after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**


Dated: September 14, 2011                      **/s/ Gary S. Austin**
                                               **The Honorable Gary S. Austin**
                                               **United States Magistrate Judge**